IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SASORO 13, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-03274-N |
| | § | |
| 7-ELEVEN, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This order addresses Defendant 7-Eleven, Inc.'s motion to dismiss all of Plaintiff Sasoro 13, LLC's ("Sasoro") claims [28]. The Court concludes that Sasoro has failed to state a claim upon which relief can be granted and thus grants 7-Eleven's motion. Further, because the Court dismisses Sasoro's claims, Sasoro's outstanding motions[1] relating to its previous application for preliminary injunction are moot.

### I. THE TERMINATION OF SASORO'S 7-ELEVEN FRANCHISE

Sasoro, owned by Henri and Ester Sas, operates a 7-Eleven gas station franchise in Las Vegas, Nevada. Am. Compl. ¶ 7 [25]. Under the current version of the parties' franchise agreement (the "Agreement"), 7-Eleven retained discretion to terminate the Agreement in various circumstances, including immediately and without opportunity to cure in the event that Sasoro failed to comply with its terms on four or more separate

---

[1] Plaintiff's Motion for Leave to File an Appendix with Its Reply Supporting Its Application for Preliminary Injunction [46]; Motion to Reconsider Orders Unfiling Plaintiff's Application for Preliminary Injunction and Reply Supporting Its Application for Preliminary Injunction [53].

MEMORANDUM OPINION AND ORDER – PAGE 1

occasions within a two-year period.  *Id.* ¶ 17; App. Supp. Defs.' Mot. Dismiss, Ex. A [30], Agreement § 26(a)(10).  Between December 2021 and July 2022, 7-Eleven issued Sasoro ten Notices of Material Breach for alleged noncompliance such as late and missing cash reports and refusing 7-Eleven access to the premises.  Defs.' Answer & Third Party Compl., Ex. B, Notices of Material Breach & Termination Notices 21, 24 [27-2].[2]  On October 10, 2022, 7-Eleven notified the Sases that it was exercising its right pursuant to section 26(a)(10) to terminate the Agreement, effective one week later.  *Id.* 20–25.

Sasoro initiated this litigation, and the parties are currently under an agreed temporary restraining order [41].  Sasoro's Amended Complaint asserts claims for declaratory judgment, breach of contract, violations of Article 2[3] of the Texas Uniform Commercial Code[4] ("UCC"), the Petroleum Marketing Practices Act[5] ("PMPA"), and the Texas Deceptive Trade Practices Act[6] ("DTPA").  7-Eleven has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[2] A district court may properly consider contracts or other documents that are not attached to the complaint, but that are referenced within it and attached to a defendant's Rule 12(b)(6) motion.  *See Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).  7-Eleven's brief supporting its motion to dismiss cites to the "compilation of the ten breach notices" attached to its counterclaim.  Defs.' Br. Supp. Mot. Dismiss 10 n.2 [29].
[3] The Amended Complaint does not invoke specific provisions of the Texas UCC, but Sasoro appears to invoke Article 2 by claiming coverage because under the Agreement, it purchases 7-Eleven's branded goods.  ¶ 58; *see supra* Part V.
[4] Codified at TEX. BUS. & COM. CODE ANN. §§ 2.101, *et seq.*
[5] Codified at 15 U.S.C. §§ 2801, *et seq.*
[6] Codified at TEX. BUS. & COM. CODE ANN. §§ 17.01, *et seq.*

MEMORANDUM OPINION AND ORDER – PAGE 2

## II. THE LEGAL STANDARD FOR A RULE 12(B)(6) MOTION TO DISMISS

When addressing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "When reviewing a motion to dismiss, a district court must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (internal quotation marks omitted). Thus, a district court may properly consider contracts or other documents that are not attached to the complaint, but that are referenced within it and attached to a defendant's Rule 12(b)(6) motion. *See Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

A viable complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough

to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.* (internal citations omitted).

### III. SASORO CONCEDES THAT ITS DECLARATORY JUDGMENT AND DTPA CLAIMS FAIL

Sasoro concedes that the declaratory judgment and DTPA counts are duplicative of its other contractual claims and seeks to withdraw them. Pl.'s Br. Opp. Mot. Dismiss 2 n.1 [47]. Accordingly, the Court dismisses Sasoro's claims for declaratory judgment of its rights under the Agreement and violations of the DTPA.

### IV. THE COURT DISMISSES THE BREACH OF CONTRACT CLAIM

Neither party disputes that Texas law governs the Agreement. *See* Agreement § 30(a). "Under Texas law, a plaintiff alleging a breach of contract must establish (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 288 (5th Cir. 2004) (citing *Runge v. Raytheon E–Systems, Inc.*, 57 S.W.3d 562, 565 (Tex. App. — Waco 2001, no pet.)).

Sasoro's theory of breach relies primarily on the implied covenant of good faith and fair dealing. However, for common law breach of contract claims, "[i]t is well established that Texas courts do not recognize an implied duty of good faith and fair dealing 'unless intentionally created by express language in a contract or unless a special relationship of trust and confidence exists between the parties to the contract.'" *TBK Consulting, Inc. v. Dex Media, Inc.*, 2018 WL 11434567, at *4 (N.D. Tex. 2018) (quoting *Lovell v. W. Nat. Life Ins. Co.*, 754 S.W.2d 298, 302 (Tex. App. — Amarillo 1988, writ denied)).

MEMORANDUM OPINION AND ORDER – PAGE 4

The Agreement lacks a provision explicitly incorporating the covenant, and Texas courts have held that the "special relationship" cause of action "does not extend to ordinary commercial contractual relationships." *Central Sav. & Loan Ass'n v. Stemmons N.W. Bank, N.A.*, 848 S.W.2d 232, 239 (Tex. App. — Dallas 1992, no writ). Indeed, the Texas Supreme Court has declined to extend special relationship status to the franchisor-franchisee context. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84. S.W.3d 212, 225 (Tex. 2002) (citing *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595–96 (Tex. 1992) (superseded in part by a statute now repealed, TEX. REV. CIV. STAT. art. 4413(36), § 6.06(e))). Sasoro has not pled facts implicating the implied covenant of good faith and fair dealing.

Further, Sasoro's allegations do not support its conclusion that 7-Eleven lacked authority to terminate the Agreement. Sasoro concedes that it violated several contractual terms, but it argues that it cured some breaches and that others were immaterial. *See Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 767 (Tex. 2014) ("[O]ne party is excused from performing under a contract only if the other party commits a material breach."). However, section 26(a)(10) of the Agreement explicitly states that post-notification corrections do not absolve Sasoro of noncompliance for purposes of the four-strike limit, and its scope is not limited to only "material" violations; rather, section 26(a) explains that the occurrence of four instances of any noncompliance within two years is itself a material breach. Sasoro admits that it: (1) unilaterally postponed at least one audit in June 2022, Am. Compl. ¶ 24; (2) failed to maintain the required minimum net worth in November 2021, *id.* ¶ 26; (3) repeatedly submitted cash reports late in 2021, *id.* ¶¶ 27–28; and (4)

MEMORANDUM OPINION AND ORDER – PAGE 5

refused to meet with 7-Eleven's field consultant in 2021. *See* Notices of Material Breach & Termination Notices 6; Am. Compl. ¶ 30. Sasoro contends that the termination violates section 13(d)(2), setting out Sasoro's minimum net worth requirements, and section 14, reserving 7-Eleven's audit rights, but has not explained how. Thus, even taking Sasoro's allegations as true, the Amended Complaint supports 7-Eleven's grounds to terminate the Agreement pursuant to section 26(a)(10).

Because Sasoro has not sufficiently pled a term of the Agreement that 7-Eleven allegedly breached, its common law breach of contract claim fails.

### V.  THE COURT DISMISSES THE TEXAS UCC ARTICLE 2 CLAIM

The general duty of good faith and fair dealing does apply to contracts covered by the Texas UCC. TEX. BUS. & COM. CODE ANN. § 1.304. However, Article 2 of the Texas UCC applies to only the sale of goods. *Id.* § 2.102; *see also Koehler v. Sears, Roebuck & Co.*, 2001 WL 611453, at *4 (Tex. App. — Dallas 2001, no pet.), overruled on other grounds, *Nghiem v. Sajib*, 567 S.W.3d 718, 719–20 (Tex. 2019). When a contract relates to both goods and services, Texas courts consider "the essence or dominant factor of the transaction." *Koehler*, 2001 WL 611453, at *4. Whether the sale of goods or rendition of services predominates is a question of law. *See, e.g.*, *id.*; *Swire Pac. Holdings, Inc. v. Dr. Pepper/Seven-Up Corp.*, 1997 WL 153794, at *5 (Tex. App. — Dallas 1997, no pet.).

In *Swire Pacific Holdings*, a Texas appellate court considered a franchise agreement that "granted Swire rights in connection with the distribution of Seven-Up products." 1997 WL 153794, at *1. The court reasoned that although Seven-Up sold Swire the syrups used

MEMORANDUM OPINION AND ORDER – PAGE 6

to make their soft drinks, "the syrups alone would be useless to Swire without" the licensing of the Seven-Up trademark. *Id.* at *4. "Because of the importance of the non-sales aspects," the *Swire* court concluded that services rather than goods were the "essence" of the contract. *Id.*

Similarly here, the heart of the transaction is Sasoro's use of 7-Eleven's trademark. Though Sasoro purchases branded goods from 7-Eleven under the Agreement, Am. Compl. ¶ 58, it does so in connection with its contractual rights to use the 7-Eleven name. The essence of the Agreement is not goods, but services, and Article 2 of the Texas UCC does not apply. Accordingly, Sasoro's Texas UCC claim fails.

### VI. THE COURT DISMISSES THE PMPA CLAIM

The PMPA was enacted in "response to widespread concern over increasing numbers of allegedly unfair franchise terminations and nonrenewals in the petroleum industry." *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co.*, 559 U.S. 175, 178 (2010). It protects covered franchisees by prohibiting early termination or nonrenewal except in specific circumstances. *Farm Stores, Inc. v. Texaco, Inc.*, 763 F.2d 1335, 1339 (11th Cir. 1985) (citing 15 U.S.C. §§ 2802, 2804). The PMPA applies to any contract between:

> (i) a refiner and a distributor,
> (ii) a refiner and a retailer,
> (iii) a distributor and another distributor, or
> (iv) a distributor or a retailer,
>
> under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

MEMORANDUM OPINION AND ORDER – PAGE 7

15 U.S.C. § 2801(1)(A). For Sasoro to invoke the protections of the PMPA, it must satisfy the definition of either a retailer or a distributor.

A covered retailer is "any person who purchases motor fuel for sale to the general public for ultimate consumption." *Id.* § 2801(7). Under the Consigned Gasoline Amendment ("Amendment") to the Agreement, Sasoro did not purchase fuel from 7-Eleven. App. 249. Instead, 7-Eleven retained title to the gasoline until the moment of sale, and Sasoro earned a set commission. *Id.* App. 249–51. Thus, Sasoro is not a retailer within the meaning of the PMPA.

A covered "distributor" is "any person" who "purchases motor fuel for sale, consignment, or distribution to another" or "receives motor fuel on consignment for consignment or distribution to his own motor fuel accounts or to accounts of his supplier." 15 U.S.C. §§ 2801(6)(A)–(B). Again, because Sasoro does not purchase gasoline from 7-Eleven, it does not satisfy the first definition of a distributor.

Longstanding precedent makes clear that the second definition of a distributor does not encompass an entity that receives fuel on consignment for sale to the public. *See Farm Stores, Inc.*, 763 F.2d at 1341 (holding that the plaintiff was not a distributor because "the public purchase[d] motor fuel at [its] location for consumption and the distributor definition involves consignment which applies only to wholesale operations"); *Johnson v. Mobil Oil Corp.*, 553 F. Supp. 195, 198 (S.D.N.Y. 1982) ("The legislative history makes clear that in defining a 'distributor' who operates under a consignment, Congress had in mind an independent middleman acting as a jobber, not a dealer selling to the public at retail.").

In *Chatila v. Aranco Oil Corp.*, another district court assessed facts similar to those at issue here. 2003 WL 1145501 (D.N.H. 2003). The franchisee in *Chatila* also did not purchase or own the gasoline, and instead the franchisor "owned the pumps and tanks, supplied the gasoline to the pumps, and set the price for gasoline." *Id.* at *1. The court first found that the arrangement was indeed a consignment structure. *Id.* at *3 (citing Black's Law Dictionary 307 (6th ed. 1990)). The court then considered it significant that only the first half of section 2801(6) includes distributors who obtain fuel for the purpose of sale. 2003 WL 1145501, at *3–4. Concluding that the structure of the statute contemplates the sale of fuel as distinct from its distribution, the court held that "[u]nder the plain meaning of § 2801(6)(B), a person is not a distributor if the person receives fuel on consignment for retail sale." *Id.* at *4.

For the same reasons, Sasoro is also a consignee rather than a purchaser of gasoline. *See Farm Stores, Inc.*, 763 F.2d at 1340 (holding that the plaintiff was not a purchaser of gasoline because, in part, it did not pay for or take title to the gasoline, bear risk of loss, retain funds from sale, or set prices). And because the consignment was for retail sale rather than distribution to other fuel accounts, Sasoro does not satisfy the PMPA's second definition of a distributor. The parties' franchise agreement is thus not covered by the statute, and Sasoro's PMPA claim accordingly fails.

## CONCLUSION

Because Sasoro has failed to state a claim upon which relief can be granted, the Court grants 7-Eleven's motion. The Court dismisses Sasoro's claims without prejudice and grants leave to amend. If it can do so in a manner consistent with this opinion, Sasoro

MEMORANDUM OPINION AND ORDER – PAGE 9

may file a Second Amended Complaint within thirty (30) days of the date of this order. This order does not address 7-Eleven's counterclaims contained within its Answer and Third Party Complaint.

Signed February 27, 2023.

David C. Godbey
Chief United States District Judge